UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JUAN CARLOS MACEDO,

    Petitioner,

v.                                    CASE NO. 8:17-cv-1444-T-02JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## **ORDER**

Petitioner is serving a 15-year Florida prison sentence as a prison release reoffender for felony battery (great bodily harm) and discharge of firearm. Petitioner's first count was aggravated battery through great bodily harm, permanent disability or permanent disfigurement (Dkt. 14 at Ex. 1), but the jury returned a verdict of the lesser-included offense of felony battery (Dkt. 14, Ex. 2, Vol. IV, Tr. 426; Dkt. 14, Ex. 3).[1] The convictions under review were imposed July 22, 2011. Petitioner brings this petition under 28 U.S.C. § 2254. The Respondent concedes the petition is timely. Dkt. 12 at 6.

---

[1] The appendix appears in paper format only. Dkt. 14. It is not electronically docketed. Dkt. 13. The appendix contains 21 separately numbered exhibits, which will be denoted as Ex. 1, Ex. 2, etc. The trial transcript appears at Ex. 2 and is divided into volumes ("Vol. __, Tr. ___").

The Amended Petition brings seven grounds for habeas relief. Dkt. 5. The Court discusses each of these in turn and denies relief.

1. **GROUND ONE**

Petitioner asserts he is entitled to federal habeas relief because he believes the trial court abused its discretion when it denied his request for a special jury instruction on the definition of "great bodily harm."[2] Yet this claim was not "fairly presented" as a federal claim to the state court. A claim is not fairly presented if the state court "must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Requiring courts to follow a "daisy chain" to divine the federal constitutional claim is an insufficient presentation of the federal claim. *See Howell v. Mississippi*, 543 U.S. 440, 443–44 (2005) (holding federal claim was not properly presented where case relied on by petitioner cited a case, which cited another case, which cited the relevant case).

Here, Petitioner raised this issue on direct appeal in state court but did not present the issue to the state court as a federal claim. In his initial brief (Dkt. 14, Ex. 3 at 6) Petitioner did not cite "in conjunction with the claim the federal source of law on which he relies" or cite to a federal case which decided this issue, or

---

[2] Specifically, the jury requested this term be defined. The trial court gave the definition found in case law. *Heck v. State*, 774 So.2d 844 (Fla. 4th DCA 2000). The defense lawyer asked for additional language. *See* Dkt. 14, Ex. 3 at 6.

even label his claim as a federal issue. See *Baldwin*, 541 U.S. at 32. Therefore, this claim is not "exhausted."

Furthermore, Petitioner has no available avenue through which he may properly exhaust his federal claim in the state courts. Therefore, this claim should be considered procedurally defaulted. Moreover, Petitioner has failed to show cause for his failure to properly exhaust this claim; and he has not shown he is entitled to review under any recognized exception to the procedural bar. Therefore, he is not entitled to federal review of Ground One.

Concerning this exhaustion requirement it is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner has exhausted available state court remedies, 28 U.S.C.§ 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Id.* at 365–66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845; *Picard*, 404 U.S. at 277–78.

The Supreme Court has provided the lower courts with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In *Picard v. Connor*, the Court held that, for purposes of exhausting

state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief. *Id*. at 278.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See O'Sullivan*, 526 U.S. at 839–40, 848; *Bailey v. Nagle*, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This Court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See Coleman v. Thompson*, 501 U.S. 722, 734–35 & n.1 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *Chambers v. Thompson*, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*,

876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds,* 498 U.S. 308 (1991).

In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See Harris v. Reed*, 489 U.S. 255, 261–62 (1989).

When presented with a "mixed" petition—one containing both unexhausted and exhausted claims—a district court is ordinarily required to either dismiss the petition, *Pliler v. Ford,* 542 U.S. 225, 227 (2004); *Rose v. Lundy,* 455 U.S. 509 (1982), or, in limited circumstances and under the district court's discretion, "grant a stay and abeyance to allow the Petitioner to exhaust the unexhausted claim." *Espada v. Sec'y, DOC*, No. 2:08-cv-504-FtM-36, 2011 WL 4459169, at *2 (M.D. Fla. Sept. 26, 2011) (citing *Rhines v. Weber*, 544 U.S. 269, 274 (2005)).

However, when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural rule, the Eleventh Circuit has held that a district court can consider the petition but treat those unexhausted claims as procedurally defaulted. *Ogle v. Johnson*, 488 F.3d 1364, 1370 (11th Cir. 2007). Additionally, while under the AEDPA a federal court may

5

not grant a habeas petition that contains unexhausted claims, it may deny such a petition on the merits. *LeCroy v. Sec'y, Fla. Dep't of Corr.,* 421 F.3d 1237, 1261 n. 26 (11th Cir.2005).

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause and prejudice or a fundamental miscarriage of justice. *Tower*, 7 F.3d at 210; *Parker*, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. *Tower*, 7 F.3d at 210.

Ground One is not exhausted. It is barred. The Respondent concedes the remaining grounds (except for Ground Seven discussed below) are exhausted.

## 2. *INEFFECTIVE ASSISTANCE CLAIMS*

The remainder of the petition (Grounds 2 through 7) asserts claims of ineffective assistance of counsel. The standard of review on these claims is well traveled. Counsel is ineffective under the Sixth Amendment if "(1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense such that petitioner was deprived of a fair trial." *Dill v. Allen*, 488 F.3d

1344, 1354 (11th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In the habeas context, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation and internal quotation marks omitted). "If there is 'any reasonable argument that counsel satisfied *Strickland's* deferential standard,' then a federal court may not disturb a state-court decision denying the claim." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014) (citation omitted).

The standard of proof and review are the same in the context of ineffective assistance of appellate counsel as in the context of ineffective assistance of trial counsel. *Duest v. Singletary*, 967 F.2d 472, 477 n.4 (11th Cir. 1992). Petitioner must first show that his appellate counsel was objectively unreasonable in not raising the omitted issue. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Appellate counsel who files a merits brief need not and should not raise every non-frivolous claim. *Jones v. Barnes*, 463 U.S. 745, 754 (1983) (effective appellate counsel "winnows out" weaker arguments even though weaker arguments may be meritorious). The exercise of judgment involved in framing an appeal makes it "difficult to demonstrate that [appellate] counsel was incompetent" under *Strickland* for omitting an argument. *Smith v. Robbins*, 528 U.S. at 288 (citing

*Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")); s*ee also Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990).

To demonstrate prejudice, Petitioner must establish it was reasonably probable that, but for counsel's error, he would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. at 286. To determine prejudice, the reviewing court must first review the merits of the claim omitted from the direct appeal. *Boland v. Sec'y, Dept. of Corrs.*, 278 F. App'x 876, 880 (11th Cir. 2008) (unpublished) (citing *Cross v. United States*, 893 F.2d 1287, 1290 (11th Cir. 1990)). That examination requires the Court determine whether the state court would have applied a harmless error review. *Boland*, 278 F. App'x at 879 (citing *Heath v. Jones*, 941 F.2d 1126, 1136–37 (11th Cir. 1991)). He must satisfy both prongs of the *Strickland* test to prevail on a claim of ineffective assistance of appellate counsel. *Strickland*, 528 U.S. at 289.

### A. GROUND TWO — FAILURE TO APPEAL "SHOW-UP" IDENTIFICATION

Petitioner claims that his appellate counsel was ineffective for failing to raise on direct appeal the trial court's denial of his motion to suppress a "show up" identification at the scene. Petitioner's trial counsel moved to suppress the two out of court identifications as improperly suggestive. The trial court held a hearing on

the motion prior to trial on June 13, 2011. The undersigned has reviewed this portion of the trial transcript. Dkt. 14, Vol. II, Tr. 6–54. The "show up" procedure at the scene was not unnecessarily suggestive.

The record shows that a shooting occurred during a dispute in the front yard of a trailer where several people were drinking. Two witnesses (nephews of the victim) were transported by the police back to the trailer where the shooting occurred. Three males and a female remained there. One witness, Agapito, had seen the shooter and was able to identify him by a hairstyle distinct from other people in the yard during the shooting. The second witness, Reynosa, identified the defendant by noting the shooter had a white jacket, unlike anyone else in the yard at the time, and the defendant wore a white jacket.[3]

The trial court held a full hearing on suggestiveness and found that the out-of-court identifications were not suggestive. The two nephews were separated from each other in separate squad cars when they each identified Petitioner at the scene (from two other males) as the shooter. The nephews testified at trial without making in-court identifications, but their out of court identifications were placed into evidence. The victim testified at trial and made a clear and unequivocal in-

---

[3]Dkt. 14, Vol. III, Tr. 224, 229. Photographs of the suspects were taken at the scene and displayed to the jury. It was well after midnight and dark when the show-ups occured. The evidence shows Petitioner was wearing a blue and white striped hoodie. The other male suspects did not wear white. Likewise, Petitioner had distinctive hair. The two nephews were unable to state that Petitioner also had facial hair and prominent tattoos on his neck.

9

court identification of the Petitioner as the shooter. The shooter also identified himself at the scene to the victim and his nephews as "Chorizo." Dkt. 14, Vol. III, Tr. 187, 208–09, 223. In a post-arrest statement Petitioner admitted identifying himself as "Chorizo" to the nephews and victim when they exchanged words before the shooting. Dkt. 14, Vol IV, Tr. 349.

In short, a review of the trial court transcript shows that the trial judge did not err in declining to suppress the out of court identification by the nephews and the totality of the evidence supports the accuracy of their identification. No subjective or suggestive police techniques were used. And therefore the appellate lawyer was not remiss, and certainly not *Strickland*-ineffective, in failing to assert this losing issue in the direct appeal.

### B. GROUND THREE — FAILURE TO SEEK SUPPRESSION OF IN-COURT IDENTIFICATION BY THE VICTIM

The shooting victim, Guillermo Flores, identified without hesitation the Petitioner in court as the man who shot him. Dkt. 14, Vol. III, Tr. 187–190, 201–202. Flores' out-of-court identification of Petitioner was not placed before the jury. In Ground Three, Petitioner contends his trial lawyer was ineffective for failing to move to suppress the Flores trial testimony identifying the Petitioner as the shooter. The state court adjudicating this issue in the Rule 3.850 state proceeding found in part that:

> In ground one of his motion, the Defendant alleges counsel was ineffective for failing to move to suppress victim Guillermo Flores's in-court and out-of-court identifications of the Defendant, because Mr. Flores stated to law enforcement that he never saw the gun, that he did not know the shooter, and that his nephews Cesar Reynoso and Reynaldo Agapito got a better look at the shooter than he did. First, the Court notes that no out-of-court identification [by Flores] was introduced at trial. (See trial transcript, pp. 181-95). Further, the Court finds the Defendant has failed to demonstrate that a motion to suppress the in-court identification would have been granted. (See trial transcript, pp. 181-202). The Court notes that defense counsel cross examined Mr. Flores, asking whether he told law enforcement that his nephews got a better look at the shooter than he did. (See trial transcript, p. 200). After considering the record, the Court finds the Defendant is not entitled to relief on ground one.

Dkt. 14, Ex. 12 at 46.

There were three witnesses who identified Petitioner as the shooter. Flores did so in court. The nephews' out-of-court identifications were admitted. Petitioner cross-examined Flores and got him to admit that he told the detective that he never saw a gun, and that his two nephews got a better look than he at the shooter. Flores had a verbal altercation with "Chorizo" before Chorizo shot Flores.

The record shows at trial that Petitioner's lawyer objected when the prosecutor asked Flores to describe for the jury the person he approached when walking through the neighborhood (who was Petitioner). And the lawyer again objected when the prosecutor asked Flores to identify the man from whose arm

11

he thought he saw the gun flash come from. Dkt. 14, Ex. 2, Vol. III, Tr. 184–198, 201.

This ground fails to establish constitutionally-deficient lawyering. Petitioner's trial lawyer made proper evidentiary trial objections to Flores' in-court identification. The defense lawyer's efforts, moreover, were buttressed by the proper (but unsuccessful) motion and hearing to suppress out-of-court identifications by the nephews. Yet, Flores was clear and firm in court — he picked out Petitioner as his shooter.

### C. GROUND FOUR — BAD ADVICE RE: PLEA OFFER

Petitioner brings as a fourth ground that his trial lawyer was ineffective in advising him to reject a five-year prison plea offer tendered by the State before trial. This ground is belied by the full pretrial colloquy on the plea offer in this record. *See* Dkt. 14, Vol. II, Tr. 55–57. The post-conviction court held a hearing on this matter and found:

> In [the next] ground…, the Defendant alleges counsel was ineffective for advising the Defendant to reject the State's offer of five years in Florida State Prison followed by probation. The Defendant asserts counsel advised him to reject the offer because counsel believed he would be able to discredit the State's witnesses on cross-examination, and the Defendant would be acquitted at trial.
>
> At the hearing on the motion, the Defendant testified that he refused the State's offer of five years in Florida State Prison, followed by ten years of probation, because counsel advised him

12

> that he could discredit the witnesses and that the Defendant would win at trial. The Defendant testified that he would have accepted the State's offer had counsel not advised him that he would be acquitted at trial.
>
> At the hearing, trial counsel Dalton McKeever testified that on the morning of trial, he discussed with the Defendant the State's offer of five years in Florida State Prison, followed by, ten years of probation, with a waiver of the habitual violent felony offender and prison releasee reoffender designations. Mr. McKeever testified that the Defendant appeared to understand the offer and the consequences if he rejected the offer and lost at trial. He testified that he reviewed with the Defendant inconsistencies between the witnesses' statements, and they discussed the strengths and weaknesses of the case. Mr. McKeever testified that he never made any assurances that they would win at trial, and it was the Defendant's decision to reject the State's offer. The Court finds Mr. McKeever's testimony credible. After considering the Defendant's motion, testimony presented at the evidentiary hearing, and the record, the Court finds the Defendant has failed to demonstrate that counsel's performance was deficient. As such, this claim is denied.

Dkt. 14, Ex. 17 at 203–204.

The state court's adjudication of the issue raised is well grounded in the factual record. This ruling is consistent with *Strickland*. The practice described by lawyer McKeever is consistent with the undersigned's extensive knowledge of criminal procedure practices in the Thirteenth Judicial Circuit. Petitioner is entitled to no relief on this ground. He was fully informed of the plea offer and had a full discussion of the merits with his lawyer and so advised the trial judge. As a recent releasee from Florida prison on a felony, this was not Petitioner's first experience with the system. Petitioner also had pending other charges for

13

domestic violence, kidnapping, and aggravated assault, and the plea discussions also involved a joint package. Dkt. 14, Ex. 15 (2/18/2016 Post-conviction evidentiary hearing) at 213:5.

### *D. GROUNDS FIVE AND SIX — FAILURE TO CROSS DEPUTY ON IDENTIFICTON PROCEDURE*

Petitioner's fifth ground asserts ineffective assistance of trial counsel involving a failure in cross-examining the deputies who conducted the out-of-court "show up" identification procedure with the two nephews. These grounds are sorely weakened by the fact that trial counsel did seek to suppress the nephews' out-of-court identification as suggestive and did participate capably in an evidentiary hearing on that motion to suppress. The motion to suppress I.D. was denied properly.

Further, there are thus strategic reasons not to "go the suggestiveness route" before a jury. Before a jury, such a legalistic theme to cross-examine the Deputies might smack of a technicality. Whether each nephew saw and identified the right man might be, to the jury, better addressed on cross examination to the nephews themselves, who claimed no present, in-court ability to identify. Having lost a motion to suppress, the saliency of this "suggestiveness" issue is much weakened before a lay jury unaware of constitutional police procedure.

Nevertheless, the court in the state postconviction proceeding held a hearing on the matter, finding as to the first nephew:

> In [the next] ground, the Defendant alleges counsel was ineffective for failing to cross- examine Deputy Billy Ray Nixon regarding [the first nephew] witness Reynaldo Agapito's out-of-court identification of the Defendant. The Defendant argues counsel should have questioned Deputy Nixon to elicit testimony that law enforcement used a suggestive show-up identification procedure.
>
> At trial, the State questioned Deputy Nixon regarding Mr. Agapito's out-of-court identification of the Defendant. (*See* trial transcript, pp. 232-33). The Court notes that prior to trial defense counsel moved to suppress Reynaldo Agapito's and Cesar Reynoso's out-of-court identifications, arguing the procedure used was unnecessarily suggestive. (*See* trial transcript, pp. 5-52). However, the Court denied the Defendant's motion. (*See* trial transcript, pp. 52-53). At trial, counsel cross examined Mr. Agapito regarding why he identified the Defendant during the show up identification. (*See* trial transcript, pp. 211-16). After considering the record, the Court finds the Defendant has not demonstrated that counsel was ineffective for failing to cross examine Deputy Nixon regarding the show-up identification. As such, ground three is denied.

Dkt. 14, Ex. 12 at 47–48. And the Court made a similar ruling as to the other deputy and the second nephew:

> [T]he Defendant alleges counsel was ineffective for failing to cross-examine Deputy Hector Ortiz regarding [second nephew] witness Cesar Reynoso's out-of-court identification of the Defendant. The Defendant argues counsel should have questioned Deputy Ortiz to elicit testimony that law enforcement used a suggestive show-up identification procedure. At trial, the State questioned Deputy Ortiz regarding Mr. Reynoso's out-of-court identification of the Defendant. (*See* trial transcript, pp. 234-37). As noted above, defense counsel moved to suppress both Reynaldo Agapito's and Cesar Reynoso's out-of-court identifications prior to trial, and the Court denied the Defendant's motion. (*See* trial transcript, pp. 5-53). At trial, counsel cross examined Mr. Reynoso regarding

15

> why he identified the Defendant during the show-up identification. (*See* trial transcript, pp. 225-29). After considering the record, the Court finds the Defendant has not demonstrated that counsel was ineffective for failing to cross examine Deputy Ortiz regarding the show-up identification. As such, ground four is denied.

Dkt. 14, Ex. 12 at 48.

These rulings are sound, and within fair parameters of *Strickland*. Once the trial judge denied the motion to suppress, the "suggestiveness" issue faded significantly. Moreover, a fair reading of this record shows the procedures used for the nephews' identification at the scene were *not* suggestive.[4] The trial lawyer's handling of the issue concerning the nephews' out-of-court identifications were not *Strickland*-deficient, not even close.

### E. GROUND SEVEN — FAILURE TO OBJECT TO TRIAL COURT'S ANSWERS TO JURY NOTE QUESTIONS

Respondent argues that this ground is not exhausted, and that Petitioner has confused issues in this ground. In Ground Seven (set forth at Dkt. 5-1 at 5), Petitioner states that the jury sent a question/note, asking "what is meant by permanent disability or disfigurement?" This relates to the felony battery count,

---

[4] The show-up was after 2:00 a.m. Dkt. 14, Vol. II, Tr. 6, some two and a half hours after the shooting; *id.* at 18. The witnesses were at the hospital with the victim, their uncle. The officers properly separated the two eyewitnesses so they could not influence each other. *Id*. The officers separately drove the witnesses to the scene, a front yard with people in it. The first witness had no hesitancy in picking out Petitioner. *Id*. at 9. Several males were present, and the first witness picked the Petitioner. *Id*. at 12. The second witness "advised that [Petitioner] looked like the person that was the shooter." *Id*. at 17. Nephew Agapito was "a couple of feet" from the shooter. Dkt. 14, Vol. II, Tr. 37–38.

and Petitioner contends that if the matter were handled effectively, he likely would have been convicted of the lesser, simple battery, a misdemeanor. This is because the jury would only find "slight, minor, or moderate harm" and thus would find simple battery. Dkt. 5-1 at 5.

Whether a lesser-included finding of simple battery is likely seems quite dubious on this record. The offense of conviction was the first lesser from the aggravated battery charge. Defendant shot his gun at the victim, two or more times.[5] According to the victim, he is permanently missing part of the bone structure in his foot. The victim testified about a harrowing and difficult, bloody injury and debilitating eight-month wheelchair recovery. Dkt. 14, Ex. 2, Vol. III, Tr. 189–191. The treating emergency room physician testified that the caliber size of the bullet was probably mid-range, Dkt. 14, Ex. 2, Vol. IV, Tr. 313, and there were about five broken bullet fragments inside of the victim's foot, and one small bone was broken. *Id.* at 319. A portion of the bullet remains in the victim's foot which impairs his walking. Dkt. 14, Ex. 2, Vol. III, Tr. 192.

In any event, the Petition goes on to state that when the jury asked, "what is meant by permanent disability or disfigurement?" the judge answered "there is no

---

[5] Petitioner's brother and the nephew Reynaldo Agapito testified there were two gunshots. Dkt. 14, Vol. III, Tr. 213. The victim said "a couple of times." Dkt. 14, Vol. III, Tr. 191–192. No brass cartridges were found suggesting a revolver was used. In Petitioner's house trailer, a loaded revolver was found with two spent cartridges in the wheel, albeit with no usable DNA or prints. Dkt. 14, Vol. IV, Tr. 275–276; 304–310; 328, 334, 369.

legal definition, I can only provide you with what you have been given." Dkt. 14, Vol. IV, Tr. 448. Petitioner states that this was error and his lawyer should have objected. Petitioner states that "the jury did not ask for a legal definition; rather they asked what is meant by permanent disability or disfigurement." Petitioner said this confused the jury and thus they convicted him of the greater offense (albeit still a lesser-included). But it is clear that there is no such definition in the Florida jury instructions on battery. The trial judge quite properly answered that question by stating so and the trial lawyer properly did not object. These words "permanent disability or disfigurement" are not so obtuse that they were beyond the jury's ken.

In this ground Petitioner also makes an unclear reference to a "read back," which is not apparent from the trial record.

## *CERTIFICATE OF APPEALABILITY*

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Proceedings for the United States District Courts; *see Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To merit a COA, Petitioner must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he

seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Petitioner is not entitled to either a COA or leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is denied. Leave to appeal *in forma pauperis* is denied. Petitioner must obtain permission from the circuit court to appeal *in forma pauperis*.

## *CONCLUSION*

For the foregoing reasons, no evidentiary hearing is necessary. The Court denies Macedo's Petition with prejudice. The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Tampa, Florida, on February 24, 2020.

/s/ *William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record
Petitioner, pro se

19